UNITED STATES of America, Plaintiff–Appellee,

v.

Pablo C. MORALEZ, also known as "Paul", Defendant–Appellant.

No. 90–3661.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 20, 1992.

Decided May 20, 1992.

Rehearing and Rehearing En Banc Denied June 30, 1992.

Frances C. Hulin, Asst. U.S. Atty. (argued), Office of the U.S. Atty., Danville, Ill., for U.S.

Kennedy Yardley, Houston, Tex., Curtis L. Blood (argued), Collinsville, Ill., for Moralez.

Before CUDAHY and COFFEY, Circuit Judges, and WOOD, Jr., Senior Circuit Judge.

COFFEY, Circuit Judge.

Pablo Moralez appeals his conviction and sentence for possession with intent to distribute marijuana. He challenges the sufficiency of the evidence, the trial court's failure to conduct a suppression hearing, certain evidentiary rulings, his sentence, and his trial counsel's performance. We affirm.

## I.

On March 21, 1990, a federal grand jury returned an indictment against Pablo Moralez and his son, Gilbert Moralez, charging each of them with one count of possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1). Father and son proceeded to trial on July 18, 1990.[1]

At trial, Illinois State Trooper Todd Trautvetter testified that on February 28, 1990, he was traveling northbound on Interstate 57 with his patrol dog towards his assigned state police district in the Chicago area when he began pacing a 1985 grey Chevrolet Blazer with Texas license plates. After determining that the vehicle was speeding and that the driver was not wearing his seat belt, Trautvetter activated his flashing lights and pulled the Blazer over

---

1. The district court granted Gilbert Moralez's motion for a judgment of acquittal at the close of the government's case.

to the side of the road. The driver produced a Texas driver's license for Pablo C. Moralez, which was verified by Trooper Trautvetter as valid. According to the officer, Pablo Moralez was evasive when answering questions and became more nervous the longer he was questioned.

Trooper Trautvetter's suspicions were aroused, and he asked the defendant for consent to search the vehicle; the defendant responded, "Sure." The trooper asked the defendant two more times whether he could search the Blazer, and the defendant again replied, "Sure." Trautvetter then informed Moralez that he would be using his police dog to assist him in searching the vehicle. While searching the exterior of the Blazer, the canine showed particular interest in the tailgate area. The trooper observed two spare tires in the tailgate area, and after removing one of them from the Blazer, he noticed that the tire was unusually heavy. In addition, the canine became noticeably excited after sniffing the tire, and at this time the officer asked the defendant whether he could remove the tire from the rim; the defendant again replied, "Sure." After several unsuccessful attempts at prying the tire from the rim, Trooper Trautvetter asked the defendant whether he could take the tire to a gas station for the removal of the tire from the rim, and the defendant consented. The defendant and his son accompanied Trautvetter to the gas station, and when the tire was pried from the rim, Trooper Trautvetter discovered ten freezer bags containing marijuana. The trooper discovered five more packages of marijuana in the second spare tire. The contents of both sets of packages amounted to 29½ pounds of marijuana. Gary Havy, a forensic scientist specializing in latent fingerprints for the Illinois State Police, testified that the defendant's fingerprint was on one of the freezer bags that contained marijuana.

The jury found Moralez guilty of one count of possession of marijuana with intent to distribute. On November 28, 1990, the district court sentenced the defendant to serve 100 months of imprisonment to be followed by a period of supervisory release

of four years, and imposed a special assessment of $50.

## II.

The defendant raises the following arguments on appeal: (1) the evidence presented at trial was insufficient to sustain his conviction; (2) the trial judge erred in refusing to conduct a suppression hearing on the constitutionality of the search of the vehicle; (3) the prosecutor improperly argued during closing argument that the defendant owned the vehicle that contained the marijuana; (4) the application of the career-offender section of the Sentencing Guidelines to the defendant's sentence resulted in a double enhancement of his punishment; and (5) his trial counsel's assistance was constitutionally deficient.

## III.

### A. Sufficiency of Evidence

■ The defendant contends that his conviction should be reversed because the mere presence of marijuana in the vehicle he was driving, combined with his fingerprint on a bag of marijuana, was insufficient to sustain his conviction. A defendant attacking the sufficiency of the evidence has a heavy burden, and "[o]nly where the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt, may an appellate court overturn the verdict." *United States v. Redwine*, 715 F.2d 315, 319 (7th Cir.1983), *cert. denied*, 467 U.S. 1216, 104 S.Ct. 2661, 81 L.Ed.2d 367 (1984) (citation and quotation omitted). Furthermore, all reasonable inferences must be drawn in favor of the government. *United States v. Douglas*, 874 F.2d 1145, 1151 (7th Cir.), *cert. denied*, 493 U.S. 841, 110 S.Ct. 126, 107 L.Ed.2d 87 (1989).

■ Moralez was charged with possession of marijuana with the intent to distribute in violation of 21 U.S.C. § 841(a)(1). The elements of the crime are (1) knowing possession of marijuana, and (2) an intent to distribute it. As to the first element, knowing possession of marijuana, evidence

at trial demonstrated that the defendant was driving a vehicle that contained two spare tires filled with marijuana packets weighing a total of 29½ pounds. In addition, a forensic scientist identified the defendant's fingerprint on one of the marijuana freezer bags. Thus, a jury could reasonably infer that the defendant knowingly possessed the marijuana. In a case similar to the one before us, this court ruled that a defendant apprehended by police as he was attempting to unlock the door of a car containing cocaine was in possession of the drugs. *United States v. Garrett*, 903 F.2d 1105 (7th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 272, 112 L.Ed.2d 227 (1990). The facts in the case before us are even more incriminating than the facts in *Garrett*, because unlike the defendant in *Garrett*, Moralez was actually in complete control and possession of the vehicle while driving the car in which the marijuana was discovered.

As to the second element, intent to distribute the marijuana, the fact that the defendant was in possession of approximately 30 pounds of marijuana would allow the jury to reasonably infer that the marijuana was more than the amount usually kept for personal use, and was thus intended for distribution. Indeed, testimony at trial established that the marijuana found in the vehicle driven by the defendant was worth approximately $28,000 to $35,000. Moreover, the marijuana was contained in fifteen separate packages. *See United States v. Gooding*, 695 F.2d 78, 84 (4th Cir.1982) (approximately 25 grams of cocaine which was "packaged in a way typical ... of the packaging used by narcotics distributors" supported the inference of in-

tent to distribute). Accordingly, sufficient evidence supported the jury's verdict that the defendant knowingly possessed the marijuana with intent to distribute it.[2]

## B. Denial of Suppression Hearing

■ The defendant argues the district court erred when it refused to conduct a suppression hearing even though the defendant waited until the morning of trial to raise the motion. The defendant was arraigned on May 8, 1990, and a pre-trial conference was held on June 29, 1990. The defendant failed to present the suppression motion at the pre-trial conference but instead moved for a suppression hearing for the first time on July 18, 1990, the first day of trial. The district court denied the defendant's motion for suppression hearing, ruling the motion to be untimely.

"A trial court has discretion when considering an untimely motion and a reviewing court may disturb the trial court's decision only for clear error." *United States v. Hamm*, 786 F.2d 804, 806 (7th Cir.1986) (citing *United States v. Mangieri*, 694 F.2d 1270, 1283 (D.C.Cir.1982)). Pursuant to Fed.R.Crim.P. 12(b)(3), a motion to suppress evidence must be raised before trial:

> "Rule 12. Pleadings and Motions Before Trial
>
> \*     \*     \*     \*     \*     \*
>
> (b) Pretrial Motions. Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion. Motions may be written or oral at the discretion of the judge. *The following must be raised prior to trial:*
>
> \*     \*     \*     \*     \*     \*

---

**2.** The appellant further argues that the district court prejudiced his case through restricting cross-examination of the law-enforcement officers who investigated the case. The defense attorney was attempting to question the witnesses on whether they conducted a search of Moralez's home in Texas in order to challenge the government's assertion that Moralez intended to distribute the marijuana. The district judge stated that the issue of the scope of the government's investigation "doesn't seem very relevant to the elements charged in the indictment." On appeal, Moralez argues that "[t]he burden was upon the government to prove intent to distrib-

ute, and the questions were relevant to that intent." He asserts that since the government failed to prove that Moralez owned the vehicle, "the inference of intent to distribute rested solely on the doubtful evidence of Pablo Moralez's control over the marihuana [sic]." We agree with the district court that the government's failure to search Moralez's home in Texas was not probative of whether the defendant intended to distribute the nearly 30 pounds of marijuana in the vehicle he was driving. The district court did not abuse its discretion in sustaining the government's objection to the cross-examination.

■ Motions to suppress evidence...." (Emphasis added). Absent an extension of time set by the court at arraignment for the filing of pretrial motions, the failure to file a motion to suppress by the date set shall constitute waiver of the opportunity to file the motion. *See* Fed.R.Crim.P. 12(f). Because the defendant did not file his motion to suppress until the morning of the trial, the issue is deemed waived.

■ Even if the trial judge had considered the motion on the merits, we are convinced that the motion to suppress the marijuana would have been denied because the defendant specifically consented to the search of the vehicle. Trooper Trautvetter testified at trial that he asked the defendant three separate times whether he could search the vehicle, and that each time the defendant replied, "Sure." Trautvetter also received the defendant's consent before removing the spare tires from their rims. Thus, we are of the opinion that Moralez voluntarily consented to the search of the vehicle.[3] *See United States v. Talkington*, 875 F.2d 591, 594 (7th Cir.1989) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)). The district court's denial of the defendant's motion to suppress the evidence as untimely was not clearly erroneous.

### C. Improper Argument

■ The defendant argues that the prosecutor's references in closing argument to "Mr. Moralez's vehicle," "Mr. Moralez's car," and "Mr. Moralez's Blazer" were improper because there was no evidence in the record that the defendant was the owner of the vehicle. As a result, the defendant contends that the improper argument influenced the jury's verdict and deprived him of a fair trial. Because the defendant failed to object to the ownership question during closing argument, the argument is waived. *See United States v. Harty*, 930 F.2d 1257, 1261 (7th Cir.1991). Nonetheless, we may consider arguments raised for the first time on appeal under the plain-error rule of Fed.R.Crim.P. 52(b). "The plain error rule, 52(b), is to be applied cautiously and only where it can be said that a fundamental error, so basic and prejudicial has occurred that justice cannot have been done, or where the error denies a fundamental right of the accused." *United States v. Garcia*, 897 F.2d 1413, 1422 (7th Cir.1990) (citing *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir.1982)).

This court follows a two-step analysis in considering a claim of improper argument by the prosecution:

"First, we determine whether, considered in isolation, the challenged remark was improper. If so, we reexamine the improper remark in light of the entire record to determine whether the remark deprived the defendant of a fair trial."

*United States v. Swiatek*, 819 F.2d 721, 730 (7th Cir.), *cert. denied*, 484 U.S. 903, 108 S.Ct. 245, 98 L.Ed.2d 203 (1987). Even assuming the prosecutor's references to the defendant's ownership of the vehicle were improper, we do not believe the comments concerning the ownership of themselves deprived him of a fair trial. "[O]wnership of the property in which contraband is found is not essential to a finding of possession of the contraband." *Garrett*, 903 F.2d at 1112 n. 8. Furthermore, as we demonstrated above, the evidence was sufficient to establish that Moralez was in possession of the marijuana, as he was driving the vehicle and his fingerprint was on one of the marijuana packages. Thus, the prosecutor's remarks about the ownership of the vehicle were not prejudicial, for *ownership of the vehicle is irrelevant in determining whether the defendant was in possession of the marijuana.* The prosecutor's brief references to the defendant's ownership of the vehicle without any objection on the part of defense counsel did not prejudice the defendant's rights.

---

**3.** The appellant's argument that there was no probable cause for the search is irrelevant—for when consent is given, probable cause is unnecessary. Moralez cites no persuasive reason to support his assertion that he would not have been free to leave if he had refused to allow the search.

## D. Prior Convictions

■ The defendant contends that the application of the career offender provision of Sentencing Guideline 4B1.1 resulted in a double enhancement of his punishment. The defendant qualified as a career offender pursuant to § 4B1.1 because (1) he was at least 18 years of age at the time of the instant offense, (2) the instant offense is a felony, and (3) he had two prior felony convictions for controlled substance violations.[4] The defendant's current conviction was under 21 U.S.C. § 841, which carries a maximum penalty of five years for possession with the intent to distribute less than 50 kilograms of marijuana. 21 U.S.C. § 841(b)(1)(D). However, this statute carries a maximum term of ten years if the defendant commits such a violation after one or more prior controlled substance convictions. As a career offender with an offense level of 24, the defendant's guideline range was 100 to 125 months. He received the lowest sentence within the guideline range, 100 months. The defendant now argues that the "prior convictions enhanced his sentence twice; once to increase the Offense Statutory Maximum to 10 years and again to enhance the offense level and criminal history category under the career offender guidelines."

Several courts have specifically rejected this contention. *See United States v. Amis*, 926 F.2d 328, 330 (3d Cir.1991); *United States v. Sanchez–Lopez*, 879 F.2d 541, 558 (9th Cir.1989). In a case factually similar to ours, the Ninth Circuit in *San-*

*chez–Lopez* discussed the issue of double enhancement:

"[The defendant] contends that because his two prior convictions enhanced the permissible punishment under section 841(b)(1)(B) from a range of 5 years to 40 years to a range of 10 years to life, and because the maximum punishment of life results in a higher offense level under the Sentencing Guidelines, impermissible double enhancement occurs.

"Multiple penalties for a single criminal transaction are not necessarily impermissible where Congress manifests its intent that enhancement of penalties is proper. *United States v. Blocker*, 802 F.2d 1102, 1105 (9th Cir.1986). In the instant matter, however, *it does not appear that there was any double enhancement of penalties*. The Sentencing Guidelines are not a separate statutory provision of penalties. The Sentencing Guidelines are intended to provide a narrow sentence range within the range authorized by the statute for the offense of conviction. *See* 28 U.S.C. § 994(b)(2) (1988 Supp.) (specifying the sentence range under the Sentencing Guidelines); *Mistretta* [*v. United States*], [488 U.S. 361] 109 S.Ct. [647,] 656 [102 L.Ed.2d 714 (1989)]; Commentary, Application Note #10 to Sentencing Guidelines § 2D1.1 ("The Commission has used the sentences provided in ... the statute (21 U.S.C. § 841(b)(1), as the primary basis for the guideline sentences.'). Indeed, the Commentary to § 5G1.1 of the Sentencing Guidelines provides, '*If the statute requires imposition of a sentence other*

---

4. § 4B1.1 of the Sentencing Guidelines provides:

"*Career Offender*

A defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. If the offense level for a career criminal from the table below is greater than the offense level otherwise applicable, the offense level from the table below shall apply. A career offender's criminal history category in every case shall be Category VI.

| Offense Statutory Maximum | Offense Level |
|---|---|
| (A) Life | 37 |
| (B) 25 years or more | 34 |
| (C) 20 years or more, but less than 25 years | 32 |
| (D) 15 years or more, but less than 20 years | 29 |
| (E) 10 years or more, but less than 15 years | 24 |
| (F) 5 years or more, but less than 10 years | 17 |
| (G) More than 1 year, but less than 5 years | 12." |

*than that required by the guidelines, the statute shall control. The sentence imposed should be consistent with the statute but as close as possible to the guidelines.'* Thus, the range of 30 years to life calculated under the Sentencing Guidelines as applied to [the defendant] was within the statutory range of 10 years to life under section 841(b)(1)(B). The method the Sentencing Commission used to calculate the sentence under the career offender provision is of no consequence in the instant matter where the sentence is sanctioned by Congress by statute.

"Moreover, *Congress made it very clear that the Sentencing Commission should ensure that individuals who were convicted of a controlled substance offense, who were over eighteen years of age, and who had two or more prior felonies for controlled substance offenses, should receive a sentence of imprisonment under the guidelines that is at or near the maximum term authorized by statute.* 28 U.S.C. § 994(h); *accord* Commentary to Sentencing Guidelines § 4B1.1. The career offender provision, section 4B1.1, implements Congress' mandate. *Mistretta*, 109 S.Ct. at 657."

*Sanchez–Lopez*, 879 F.2d at 558–59 (emphasis added).

We agree with the reasoning in *Sanchez–Lopez* and hold that where a defendant with prior convictions is treated as a career offender under the Sentencing Guidelines, there is no double enhancement of penalties. Congress expressed its desire that career offenders be sentenced "at or near the maximum term authorized" by statute. 28 U.S.C. § 994(h). Thus, the district court properly calculated defendant Moralez's sentence under the career offender provisions of the Sentencing Guidelines.[5]

### E.  Ineffective Assistance of Counsel

Finally, the defendant argues that he received ineffective assistance of counsel at trial for two reasons: (1) his counsel failed to file the motion to suppress the marijuana in a timely fashion; and (2) counsel failed to object to references made by the prosecutor in closing argument regarding the defendant's ownership of the vehicle. We have previously noted the heavy burden a defendant bears in establishing an ineffective assistance of counsel claim:

"To prevail on his claim of ineffective assistance of counsel, [the defendant] must show that his trial counsel's performance fell below an objective standard of reasonableness, and that counsel's deficiencies prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 688–92, 104 S.Ct. 2052, 2064–67, 80 L.Ed.2d 674 (1984). We begin with a strong presumption that counsel rendered reasonably effective assistance, and consider counsel's effectiveness under the totality of the circumstances. *United States v. Zylstra*, 713 F.2d 1332, 1338 (7th Cir.), *cert. denied*, 464 U.S. 965, 104 S.Ct. 403, 78 L.Ed.2d 344 (1983). To overcome that presumption, [the defendant] must identify 'acts or omissions [of course] which were outside the range of professionally competent assistance.' *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066. To satisfy the prejudice component of *Strickland*, [the defendant] 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.' *Id.* at 695, 104 S.Ct. at 2068–69."

*United States v. Snyder*, 872 F.2d 1351, 1358 (7th Cir.1989).

■ Initially, the defendant contends that the district court's denial of his motion to suppress as a result of his defense counsel waiting until the day of trial to file the motion resulted in prejudice to his case. However, as we explained *supra*, even if the judge had considered the motion on the merits, the motion to suppress the marijuana would likely have been denied, given that the defendant voluntarily consented to the search of the vehicle. Trooper Trautvetter asked the defendant on three sepa-

---

**5.**  Indeed, a 100–month sentence out of a maximum of 120 months is only 83% of the maximum. That may be short of being "at or near the maximum term authorized...."

rate occasions whether he had permission to search the vehicle, and each time the defendant replied, "Sure." Moreover, Trooper Trautvetter also asked for, and received, consent before removing the spare tires from their rims. Therefore, the defendant can demonstrate no prejudice as a result of his trial counsel waiting until the day of trial to file the motion to suppress the fruits of the search in light of the fact that the motion in all probability would have been denied.

Likewise, defense counsel's failure to object to the prosecutor's references regarding the defendant's ownership of the vehicle did not result in prejudice to the defendant. The government was required to prove beyond a reasonable doubt that the defendant possessed the marijuana, and it is irrelevant to the crime with which the defendant was charged whether the defendant owned the vehicle in which the marijuana was transported, for he was driving it and was thus in control and possession of it. The defendant is unable to cite any cases holding that ownership of a vehicle is germane to the determination of whether a defendant had possession of drugs. Therefore, the defendant is unable to demonstrate that he was prejudiced by defense counsel's failure to object to references regarding the defendant's ownership of the vehicle. Since the defendant has failed to demonstrate that his trial counsel's alleged errors prejudiced him, his ineffective assistance of counsel claim is without merit.

### IV.

For the reasons stated, the conviction and sentence of the defendant are

AFFIRMED.