16 F.3d 1226
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 UNITED STATES of America, Plaintiff/Appellee,
v.
Booker T. DUKE, Defendant/Appellant.
 No. 93-2174.
 United States Court of Appeals, Seventh Circuit.
 Argued Jan. 25, 1994.
Decided Feb. 8, 1994.
 
 Before CUMMINGS, BAUER and ESCHBACH, Circuit Judges.
 
 ORDER
 
 1
 Booker T. Duke was convicted after a bench trial of possessing heroin with the intent to distribute and carrying a firearm in connection with a crime of drug trafficking. 21 U.S.C. Sec. 841(a)(1), 18 U.S.C. Sec. 924(c). He was sentenced to 120 months of imprisonment. On appeal, he challenges the conviction, arguing that evidence was seized pursuant to an invalid search warrant and that the district court erred in not conducting an in camera review or a hearing under Franks v. Delaware, 438 U.S. 154 (1978), to determine whether the confidential informant described in the search warrant affidavit existed.
 
 I. Background
 
 2
 On September 3, 1992, Detective Dennis Kraeszig of the Indianapolis Police Department obtained a warrant to search Duke's residence for heroin. The search warrant was based on Detective Kraeszig's affidavit swearing that a credible and reliable informant had come personally to him after having observed heroin in Duke's possession within the seventy-two hours prior to September 3, 1992. The detective-affiant stated that he knew the informant to be a past user of heroin and that the informant was familiar with the manner in which heroin was packaged for sale as was seen in Duke's residence. Detective Kraeszig also stated in the affidavit that revelation of the informant's identity would endanger the informant's life and destroy any future use of the informant, whose previous assistance had led to three drug convictions.
 
 
 3
 In executing the search warrant, the police recovered approximately 198.75 grams of heroin and lactose, a scale, strainers, tin foil, cutting agents and equipment, packaging materials, $165,700 in cash, and two handguns. The evidence seized was the basis of the indictment. Duke waived his right to a jury trial. Although he indicated in the jury waiver statement that he "will rely upon the inadmissiblity of certain evidence obtained as a result of the search," Duke did not file a pretrial motion to suppress.
 
 
 4
 In his opening statement at trial, Duke's counsel asserted that "there [was] an exclusionary rule issue," because "the warrant [was] false." Counsel sought to prove that Detective Kraeszig had invented the confidential informant referred to in the search warrant affidavit and therefore, that the evidence seized was not admissible. He conceded, however, that there was no question as to what happened after the search warrant was procured. During the trial, counsel objected continuously to the admissibility of the evidence obtained as a result of the search, claiming unlawful search and seizure. Counsel explained that he had not filed a motion to suppress because the defense's position was that only permissible evidence could be used against Duke, and that the evidence obtained pursuant to the warrant was not permissible evidence. The government then contended that counsel's remark was "blatantly a motion to suppress." In denying the government's characterization, counsel stated: "the burden is on me if I file a motion to suppress" and without the motion, "it was up to the government to prove beyond a reasonable doubt with admissible evidence."
 
 
 5
 When counsel objected again to the admissibility of any testimony from Detective Kraeszig as to what he saw or observed inside Duke's residence, the district court ruled that counsel should have raised the objection before trial. The district court stated that it was not going to stop the presentation of the evidence "to have a hearing on a motion to suppress a search warrant or the fruit of the search." Thereafter, the district court allowed counsel to have a continuing objection to any and all evidence seized as a result of the search.
 
 
 6
 At trial, Duke testified that he had met Detective Kraeszig previously in Indianapolis when he had knocked on the door of a house that was answered by the detective. The detective ordered him into the house and searched him, finding three or four packages of heroin and cocaine. According to Duke, Detective Kraeszig testified at a subsequent suppression hearing that Duke had voluntarily walked into the house. However, the court granted the motion to suppress the evidence seized during that particular encounter. The government does not dispute these facts.
 
 
 7
 Continuing the theme of Detective Kraeszig's alleged dishonesty, Duke's defense at trial emphasized the inconsistency between Detective Kraeszig's trial testimony and his warrant affidavit: while the detective had stated in the affidavit that the informant had come personally to him to provide the information, he testified at trial that he received the information over the telephone from the informant. Duke also sought to prove that only five persons had been in his house during the seventy-two hour period referred to in the affidavit and that none of them was the informant. Of those five persons, to some of whom Duke admitted selling drugs, four testified that they did not contact the authorities. With respect to the fifth person, the government stipulated at trial that he was not the informant described in the affidavit.
 
 
 8
 In the closing argument, counsel asked the district court to conduct an in camera hearing, with or without counsel's presence, to determine the existence of an informant. In response, the government argued that counsel had confused Franks, which allows attacks on search warrant affidavits, with the rules under Roviaro v. United States, 353 U.S. 53 (1957), concerning when an informant's identity should be revealed. Counsel then clarified that he had not asked for the identity of the informant and that the defense's position was merely that there was no informant. If there was no informant, counsel continued, "it doesn't matter what that affidavit contained; and it's got nothing to do with probable cause." Counsel did not specifically request a Franks hearing either before or during the trial.
 
 
 9
 The district court found that one of Duke's four witnesses was probably Duke's partner and the remaining three his customers. It found that one of Duke's witnesses/customers may very well have been the informant. In discrediting the witnesses/customers' testimony, the district court relied in part on the fact that the informant was known by Detective Kraeszig to be a past user of heroin. The district court reasoned that "if one of them is the informant ... he wouldn't come in here and admit it." The district court concluded that the testimony of Duke's witnesses/customers failed to refute the statements in the affidavit concerning the existence of an informant.
 
 II. Analysis
 
 10
 Duke argues that the only issue before the trial court was whether the evidence should have been excluded given the alleged Fourth Amendment violation. Because Duke's challenge at trial was essentially that Detective Kraeszig lied about the existence of an informant,[1] a proper way to raise this challenge would have been a request, in the context of a motion to suppress, for an evidentiary hearing under Franks v. Delaware, 438 U.S. 154, 155-56 (1978). Duke, however, failed to timely raise the issue.
 
 
 11
 The request for a Franks hearing should have been raised in a pre-trial motion to suppress because such motions generally deal with the operation of the exclusionary rule or "police conduct not immediately relevant to the question of guilt." See Jones v. United States, 362 U.S. 257, 264 (1960). See also United States v. Gomez-Benabe, 985 F.2d 607, 612 (1st Cir.1993). Under the Federal Rules of Criminal Procedure 12(b) and (f), a motion to suppress evidence must be raised before trial.[2] Failure to file a timely motion to suppress constitutes a waiver of the motion, unless the trial court grants relief from the waiver for cause shown. Fed.R.Crim.P. 12(f); United States v. Moralez, 964 F.2d 677, 680 (7th Cir.1992), cert. denied, 113 S.Ct. 293 (1992). See also United States v. Hamm, 786 F.2d 804, 806 (7th Cir.1986) (in addition to providing a legitimate explanation for failure to make a timely motion, defendant must show that actual prejudice resulted from the denial). The trial court has discretion when considering an untimely motion and a reviewing court may reverse only for clear error. Moralez, 964 F.2d at 680; Hamm, 786 F.2d at 806.
 
 
 12
 While Duke's trial counsel repeatedly refused to characterize his defense as a motion to suppress, Duke concedes on appeal that the appellate court's scope of review is that of a denial of a motion to suppress. The problem with Duke's appeal, however, is that he did not file a motion to suppress nor did he formally request a Franks hearing. Thus, the district court had no opportunity to rule directly on the issue of whether Duke was entitled to such a hearing. See United States v. McDonald, 723 F.2d 1288, 1292-93 (7th Cir.), cert. denied, 466 U.S. 977 (1984). Concededly, Duke did request an in camera hearing and the request could be interpreted broadly as a precursor to a request for a Franks hearing. However, the request came only during the closing argument and thus, too late. Similarly, even if Duke's continual objections during trial to the admissibility of the government's evidence could be construed as a motion to suppress, the objections were untimely.
 
 
 13
 Duke did not show cause to cure the waiver nor was there any impediment to his ability to raise the suppression issue. See United States v. Davenport, 986 F.2d 1047, 1048-1049 (7th Cir.1993) (Rule 12's " '[c]ause' is a more exacting standard than 'plain error,' for it requires the defendant to show some hindrance to the conduct of the defense.") In fact, the trial counsel stated on two occasions that his objections to the admission of the evidence should not be construed as a motion to suppress. He explained that he had declined to file the motion because his strategy was to have the government, instead of Duke, bear the burden of proof. Without showing cause, Duke's failure to file a timely motion to suppress on the ground that the affidavit contained false information constitutes a waiver of that argument. See United States v. Smith, 918 F.2d 1501, 1509 (11th Cir.1990) (failure to request a Franks hearing prior to trial within the deadlines set by district court constitutes waiver of the motion where defendant made no attempt to establish cause other than arguing that the request was subsumed and impliedly made in his pre-trial motion to suppress); United States v. ULLOA, 882 F.2d 41, 43 (2d Cir.1989) (waiver rule applied even where the trial judge considered the issue during trial).
 
 
 14
 Duke argues that his failure to file a pre-trial motion to suppress should not preclude an evidentiary hearing because the policies underlying the Rule 12(f) waiver rule are not implicated in his case. He cites United States v. Cassity, 631 F.2d 461, 465 (6th Cir.1980), in which the Sixth Circuit stated that "where the rule's underlying policy is not implicated, its technical requirements should not be allowed to prevail over constitutional rights." The Sixth Circuit stated that the pre-trial motion requirement eliminates from the trial "disputes over police conduct not immediately relevant to the question of guilt." Cassity, 631 F.2d 465. The rule avoids "interruptions of a trial in progress with auxiliary inquiries" which "breaks the continuity of the jury's attention." Id. It also gives the government "the time and flexibility to change its theory" depending on the outcome of the pre-trial motion. Id.
 
 
 15
 Duke maintains that the above policies were not implicated in his case. According to Duke, the momentum of the main proceeding was not impeded by his challenge to the detective's veracity because the only issue before the trial court was the validity of the warrant affidavit. For the same reason, Duke argues that the trial judge was not distracted by auxiliary inquiries. Moreover, because all evidence against Duke would be tainted if the warrant were found to be invalid, Duke argues that his case was not one where the government could make any meaningful change in its theories in the event the suppression motion was sustained.
 
 
 16
 Duke's reliance on Cassity is misplaced because the unique facts of Cassity may have constituted cause to avoid waiver under Rule 12(f). In Cassity, the defendants preserved the Fourth Amendment issue despite their failure to file a motion to suppress. A co-defendant had filed a timely motion on the same issue, and the district court had heard evidence and arguments on the issue. Because the district court found against the co-defendant as a matter of law, the appellate court held that "additional challenges by the other appellants raising the identical legal issue would neither have altered the court's ruling nor serve the purposes of the pre-trial motion rule." Cassity, 631 F.2d at 466.
 
 
 17
 In this case, however, the defense pursued a deliberate strategy not to file the motion. Thus, Duke cannot now claim that an exception should be created because his tactic failed. Moreover, this court has interpreted strictly the language of Rule 12(f). See, e.g., United States v. Kelly, No. 92-1416, slip op. at 6-7 (7th Cir. Jan. 20, 1994) ("[w]hen the defense does not seek to suppress the evidence as required by Rule 12(b)(3) before the trial, even if defendant later objects to the evidence at trial, the issue is deemed waived under Rule 12(f)"); Davenport, 986 F.2d at 1048-49 (defendant forfeited right to contest the use of confession where no motion to exclude such evidence was made before trial and no cause was shown for the omission); Moralez, 964 F.2d at 680-81. Accordingly, the district court did not commit clear error when it refused to stop the trial "to have a hearing on a motion to suppress." Nor did it abuse its discretion in denying Duke's request for an in camera hearing.
 
 
 18
 AFFIRMED.
 
 
 
 [1]
 Whether an informant existed seemed to be trial counsel's focus, although on appeal Duke raises the issue of whether the instant case presents a proper occasion under Roviaro v. United States, 353 U.S. 53 (1957), for disclosure of the informant's identity. Because that issue differs from the inquiry of whether there was really an informant, it is waived. United States v. Lopez, 6 F.3d 1281, 1287 (7th Cir.1993) (issue not raised before district court is waived unless it is plain error). Moreover, Duke does not demonstrate that the district court committed any error in failing to order disclosure of the informant's identity. See United States v. Bender, 5 F.3d 267, 269 (7th Cir.1993) (government's limited privilege of withholding the identity of an informant gives way once the defendant proves that the disclosure of the informant's identity "is relevant and helpful" to his defense or "is essential to a fair determination of a cause") (citations omitted). See also United States v. Blythe, 944 F.2d 356, 359 (7th Cir.1991) (district court's determination will be upheld unless defendant can demonstrate that the district court committed plain error)
 
 
 [2]
 The Advisory Committee Notes accompanying the 1974 Amendment to Federal Criminal Procedural Rule 12 state that objections to evidence on the ground that evidence was illegally obtained must be raised prior to trial ... "whatever the claimed basis for the application of the exclusionary rule of evidence may be." See United States v. Mitchell, 951 F.2d 1291, 1296 (D.C.Cir.1991)